**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |  |
|---|---|---|
| **VIVIAN BRINEGAR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:10cv828 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment and Plaintiff's Motion to Remand (ECF Nos. 13, 14, 16).[1] Plaintiff, Vivian Brinegar, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

---

[1] The administrative record in this case has been filed under seal, pursuant E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 11) and motion to remand (docket no. 12) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her current applications for DIB and SSI on May 24, 2007, claiming disability due to spinal stenosis[2], restless leg syndrome[3], degenerative disc disease[4], bulging disc[5], scoliosis[6], arthritis, chronic pain and fatigue, and depression. (R. at 14.) Initially,

---

[2] "Spinal stenosis is a narrowing of one or more areas in the spine — most often in the neck or lower back. This narrowing can put pressure on the spinal cord or spinal nerves at the level of compression."MayoClinic.com, http://www.mayoclinic.com/health/spinal-stenosis/DS00515 (last visited November 4, 2011).

[3] "Restless legs syndrome (RLS) is a condition in which the legs feel extremely uncomfortable while sitting or lying down. It makes the person feel like getting up and moving around" and "Restless legs syndrome can disrupt sleep — leading to daytime drowsiness — and make traveling difficult." MayoClinic.com, http://www.mayoclinic.com/health/restless-legs-syndrome/DS00191 (last visited November 4, 2011).

[4] "Degenerative disc disease can take place throughout the spine, but it most often occurs in the discs in the lower back (lumbar region) and the neck (cervical region)" and "can result in back or neck pain and/or: Osteoarthritis, the breakdown of the tissue (cartilage) that protects and cushions joints; Herniated disc, an abnormal bulge or breaking open of a spinal disc; Spinal stenosis, the narrowing of the spinal canal , the open space in the spine that holds the spinal cord. These conditions may put pressure on the spinal cord and nerves, leading to pain and possibly affecting nerve function." WebMD.com, http://www.webmd.com/back-pain/tc/degenerative-disc-disease-topic-overview (last visited November 4, 2011).

[5] "A bulging spinal disc occurs when the disc's soft, jellylike center (nucleus) is squeezed into cracks in the disc's outer covering, weakening and stretching that covering. As a disc bulges out from between the neighboring bones (vertebrae), it can press on nerves that travel to the legs or arms and can cause numbness, weakness, or pain." WebMD.com, http://www.webmd.com/hw-popup/bulging-discs (last visited November 4, 2011).

[6] "Scoliosis is a sideways curvature of the spine that occurs most often during the growth spurt just before puberty. While scoliosis can be caused by conditions such as cerebral palsy and muscular dystrophy, the cause of most scoliosis is unknown. Most cases of scoliosis are mild, but

Plaintiff alleged a disability onset date of December 27, 2004. (R. at 9.) The date was later amended, however, to December 18, 2007, to correspond with Plaintiff's fiftieth birthday. (R. at 37.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration, finding that while Plaintiff did have a history of the above-mentioned medical conditions, they have not led to any muscle weakness or loss of control due to nerve damage, nor a complete inability to occasionally bend or stoop.[7] (R. at 67; 83-88.) Additionally, the SSA found that while Plaintiff does suffer from depression, the condition has not affected Plaintiff's ability to understand, remember, be cooperative with others, or perform normal daily activities. (R. at 83.)

On February 25, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 20-52.) Plaintiff testified that she had difficulty maintaining employment because of the pain in her hands, back, and legs during working hours. (R. at 30.) She further testified that due to the chronic pain in her back and hands, she uses a cane to ambulate; however, she concedes that the cane was not prescribed by a doctor. (R. at 39.) Plaintiff also testified that she is regularly seeing a doctor and taking prescribed medication for her pain. (R. at 40.) She also testified that while the pain has led to trouble sleeping and has limited the amount of household chores she can accomplish, she can still perform simple housework, such as sweeping, dusting, and feeding her dog, if she takes intermittent breaks. (R. at 42-45.) Similarly, Plaintiff testified that she was

---

severe scoliosis can be disabling. An especially severe spinal curve can reduce the amount of space within the chest, making it difficult for the lungs to function properly." MayoClinic.com, http://www.mayoclinic.com/health/scoliosis/DS00194 (last visited November 4, 2011).

[7] Initial and reconsideration reviews in Virginia are performed by an agency of the state government - the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services - under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

limited to walking about fifteen feet before she would need to stop to rest, that she could only stand for about thirty minutes at a time, and that car rides cause her great pain. (R. at 45-46.) Finally, Plaintiff testified that she has become more depressed over time as her pain has worsened and because she cannot tend to her own needs as she had been able to do in the past. (R. at 49.)

On June 25, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity ("RFC")[8], there are jobs she could perform which exist in significant numbers in the national economy. (R. at 11-17.) Relying on the medical evidence, and especially on the report by a Dr. Cubbage that explained Plaintiff was limited to sitting for no more than two hours at a time, standing for one to two hours at a time, and walking thirty minutes at a time, the ALJ found that plaintiff had an RFC that allows her to engage in light work such that she could occasionally bend, stoop, or crouch. (R. at 401, 58-59.) Relying on the testimony of the Vocational Expert and the RFC determination, the ALJ found that that Plaintiff could perform the jobs of cafeteria attendant, cashier, or mail clerk, all of which exist in significant numbers in both the national and the Virginia economy. (R. at 54.)

The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

---

[8] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has

made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[9] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

---

[9] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[10] based on an assessment of the claimant's RFC and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If

---

[10] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 11.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of arthritis, degenerative disc disease of the cervical and lumbar spine, and depression. (R. at 11.) However, the ALJ also found that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 11-13.) The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she should be allowed to alternate between sitting and standing once every two hours, and she should only occasionally bend, stoop, climb, kneel, crouch, or crawl. (R. at 13-16.) The ALJ also found that while the Plaintiff did suffer from depression, she was able to work despite her limitations. (R. at 15.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a waitress, respiratory therapist, or a deli counter worker because such occupations exceed her current functional capacity for a reduced range of light exertional work. (R. at 16.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 16-17.) Specifically, the ALJ found that Plaintiff could work as a cafeteria attendant, a cashier, or a mail clerk. (R. at 17.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 16-17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Sum. J., ECF No. 13.) In support of her position, Plaintiff argues that the ALJ erred in: (1) determining the Plaintiff's RFC for light work; and (2) failing to find Plaintiff was limited to sedentary work and therefore disabled pursuant to the Medical Vocational Guidelines of 20 CFR Part 404. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 22-28.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 11-15.)

### A. The ALJ properly determined Plaintiff's RFC for restricted light work.

Plaintiff alleges that the ALJ erred in her determination of the Plaintiff's RFC by failing to take into account all relevant medical evidence and physician opinions. (Pl.'s Mem. at 22.) Specifically, the Plaintiff alleges that the ALJ's reading of the medical evidence is "irrational" and inconsistent with the medical consultants' evidence. (Pl.'s Mem. at 22.) During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2).

Substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a limited range of light work. It is important to note that the ALJ is not required to adopt any medical source statement unless it is well-supported by medically-acceptable clinical and diagnostic findings, and is not inconsistent with other substantial evidence of record. 20 CFR § 404.1527(d)(2), 416.927(d)(2). However, such evidence is clearly present in this case and it was properly relied upon by the ALJ. The medical consultation report written by Dr. Cubbage on January 15, 2008 explains that Plaintiff "should be able to sit for 2 hours *at a time*, stand for 1-2 hours *at a time*, and walk 30 minutes to one hour *at a time*." (R. at 401, emphasis added.) The ALJ interpreted this to mean that Plaintiff could work a full day so long as she was able to alternate between sitting and standing. (R. at 53.) Moreover, this was restated in state agency reviewing physician Dr. Astruc's report on January 29, 2008, when he indicated that Plaintiff could stand or walk at least 2 hours in an 8-hour workday. (R. at 430.) The same analysis was later affirmed, along with the determination of Plaintiff's light RFC assessment, on June 25, 2008 by Dr. Chaplin, another state agency reviewing physician. (R. at 479). Thus, Plaintiff's allegation that "every single consultative doctor that rendered an opinion regarding Plaintiff's ability on or after December 18, 2007, all opined that Plaintiff was only capable of walking/standing two hour is an eight hour workday," is simply incorrect. (Compare Pl.'s Mem. at 24 With R. at 401.)

Moreover, in addition to the medical evidence of record, the ALJ also determined that other evidence existed for the finding of an RFC for limited light work. For example, the ALJ determined that Plaintiff had only ever undergone routine, yet sporadic, treatment for her disabilities and conditions. (R. at 15.) Specifically, Plaintiff had received only treatment via medication, and no treating or consulting physician recommended undergoing surgery or

10

receiving injections. Additionally, there is no evidence that Plaintiff ever attempted or attended physical therapy sessions to manage her physical pain and soreness. (R. 15-16.) See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d. Cir. 1983) (holding that the Commissioner is entitled to rely not only on what the record says, but also on what it does not say). Also, the ALJ noted that Plaintiff's admitted activities of daily living and capabilities, despite her impairments, do not support a finding that she is completely disabled. (R. at 16.) Indeed, Plaintiff admits that she continues to work, albeit on a part time basis, and that she can take care of herself, cook simple meals, do household chores, and travel with only mild restrictions. (R. at 12, 42-46.) See Sigmon v. Califano, 617 F.2d 41, 42-43 (4th Cir. 1980) ("the commissioner can consider work done by the claimant after the alleged onset of disability as tending to show that the claimant was not then disabled").

Thus, because substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform limited light work, and because such a finding is amply supported by medical evidence and findings in the record, the ALJ did not err in her determination of Plaintiff's RFC.

**B. Plaintiff's RFC was not for sedentary work, and therefore she is not subject to Medical Vocational Guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2.**

Plaintiff's assertion that she is restricted to sedentary work, and therefore disabled pursuant to Medical Vocational Guidelines, 20 C.F.R.pt. 404, subpt. P, app. 2 § 201.10, is also misplaced. Substantial evidence supports the ALJ's finding that Plaintiff's RFC allows her to perform a limited range of light work, and such a finding is amply supported by the medical evidence and findings on the record. Assuming, *arguendo,* that the Plaintiff is entitled to a finding of an RFC for sedentary work, she may nevertheless not be "disabled" pursuant to the Medical Vocational Guidelines. The Medical Vocational Guidelines state that when a person is closely approaching advanced age (50-54), with a high school education, past relevant skilled or

semi-skilled work which is *not transferable* to sedentary work, and such person is restricted to sedentary work, the Medical Vocational Guidelines, Section 201.10 deem her to be disabled. See 20 C.F.R. pt. 404, subpt. P, app. § 201.10 (emphasis added). On the record, the VE testified that Plaintiff's past work as a respiratory assistant was skilled work, and her past work as a waitress was semi-skilled. (R. at 52.) Moreover, the VE's testimony suggests that some of her skills from being a waitress might be transferable to other positions in the food service industry. (R. at 52-53.) Therefore, it is possible that even had Plaintiff received an RFC determination for sedentary work, which she did not, she may nevertheless have not qualified as "disabled" under the medical vocational guidelines due to her possessing skills that are *transferable* to sedentary work.

Thus, because substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a limited range of light work, Plaintiff's assertion that she is restricted to sedentary work and therefore disabled pursuant to Medical Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.10, is without merit.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment and motion to remand be DENIED; that Defendant's motion for summary judgment be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                        /s/
                                Dennis W. Dohnal
                                United States Magistrate Judge

Richmond, Virginia
Date: November 18, 2011